FILED
2010 Oct-18  PM 01:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

JAMES MASON and
JOANNE PEARSON,

     Plaintiffs,

                      CASE NO:

vs.

CITY OF HUNTSVILLE,
a municipal corporation,

     Defendant.

_____/

## COMPLAINT

Plaintiffs, James Mason and Joanne Pearson, ("Plaintiffs"), through undersigned counsel, hereby file this Complaint and sue The City of Huntsville, Alabama for injunctive relief, attorney's fees and costs pursuant to the Americans with Disabilities Act and the Rehabilitation Act of 1973 and allege:

### JURISDICTION AND PARTIES

1.     This is an action for declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act, (hereinafter referred to as the "ADA") 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35, as well as § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §701 *et seq.* ("the Rehabilitation Act"). This Court is vested with original jurisdiction under 28 U.S.C §§1331 and 1343.

2.     Venue is proper in this Court, the Northeastern Division of the Northern District of Alabama pursuant to 28 U.S.C. §1391 (B) and Local Rules of the United States District Court for the Northern District of Alabama.

3.     Plaintiff, James Mason (hereinafter referred to as "Mason") is a resident of Huntsville, Alabama and is a qualified individual with a disability under the ADA. Mason suffers from what constitutes a "qualified disability" under the Americans with Disabilities Act of 1990, ("ADA") and all other applicable Federal statutes and regulations to the extent that he suffers from post polio syndrome and requires a wheelchair for mobility and has limited use of his upper extremities. Prior to instituting the instant action, Mason visited the Defendant's premises at issue in this matter, and was denied full, safe and equal access to the subject property due to the lack of compliance with the ADA. Mason continues to desire and intends to visit the Defendant's premises but continues to be denied full, safe and equal access due to the barriers to access that continue to exist.

4.     Plaintiff, Joanne Pearson (hereinafter referred to as "Pearson") is a resident of Huntsville, Alabama and is a qualified individual with a disability under the ADA. Pearson suffers from what constitutes a "qualified disability" under the Americans with Disabilities Act of 1990, ("ADA") and all other applicable Federal statutes and regulations to the extent that she suffers from severe nerve damage and requires a wheelchair for mobility and has limited use of her upper extremities.

Prior to instituting the instant action, Pearson visited the Defendant's premises at issue in this matter, and was denied full, safe and equal access to the subject property due to the lack of compliance with the ADA. Pearson continues to desire and intends to visit the Defendant's premises but continues to be denied full, safe and equal access due to the barriers to access that continue to exist.

5.    The Defendant, The City of Huntsville (hereinafter referred to as "Huntsville") is a municipal corporation conducting business in the State of Alabama. Upon information and belief, Huntsville is the operator, owner and/or lessee of the programs and services offered by Huntsville as well as the facilities, real properties and improvements which are the subject of this action, to wit: city sidewalks, curb ramps and parking; the Public Service Building located at 320 Fountain Circle (hereinafter referred to as the "Public Service Building"); the Huntsville Municipal Complex located at 308 Fountain Circle (hereinafter referred to as the "Municipal Complex"); the Historic Huntsville Depot located at 320 Church Street (hereinafter referred to as the "Depot"); Sandhurst Park located at 2928 Green Cover Road SW ("Sandhurst Park"); Brahan Spring Park Natatorium located at 2213 Drake Avenue ("Natatorium"); Joe Davis Stadium located at 3125 Leeman Ferry Road SW ("Stadium"); Mastin Lake Park located at 3315 Watson Drive NW ("Mastin Lake Park"); Lakewood Community Center located at 3601 Kenwood Drive NW ("Community Center"); Dr, Richard Showers Sr. Recreation

Center and Pool located at 4600 Blue Spring Road ("Pool") and Burritt Museum located at 3101 Burritt Drive SE ("Museum") (hereinafter jointly collectively referred to as "subject facilities").

6. All events giving rise to this lawsuit occurred in the Northern District of Alabama.

## COUNT I-VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

7. Plaintiffs re-allege and re-aver the allegations contained in Paragraphs 1-6 as if expressly contained herein.

8. In Title II of the ADA, Congress provided that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of a public entity, or be subjected to discrimination by any such entity.

9. Title II of the ADA also requires a public entity to furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of a service, program, or activity conducted by a public entity. 28 C.F.R. §35.160(b)(1).

10. Title II of the ADA and 28 C.F.R. §35.105 required Defendant to have completed a Self-Evaluation by January 26, 1993 of its current services, policies, and practices, and the effects thereof, that do not comply with the ADA. Defendant was required to proceed to make the necessary modifications.

Defendant has not completed an adequate Self-Evaluation.

11. Title II of the ADA and 28 C.F.R. §35.105 required Defendant to develop a Transition Plan by July 26, 1992, where structural changes in its existing facilities needed to be undertaken to achieve program accessibility for all persons with disabilities. Defendant failed to adequately develop a Transition Plan.

12. Defendant's failure to adequately complete its Self-Evaluation and failure to adequately develop a Transition Plan which fully meet the requirements of the ADA has denied, and continues to deny, Plaintiffs their rightful opportunity for full, safe and equal access.

13. Defendant was required to have completed structural changes to the subject facilities, over a decade ago, and, in any event, no later than January 26, 1995 pursuant to 28 C.F.R. §35.150(c). Defendant has failed to complete the required structural changes to achieve equal program, service or activity access to their facilities.

14. Defendant has known of its duties and obligations under Title II of the ADA to complete the necessary and required structural changes for over nine years. Defendant has arbitrarily and intentionally refused to complete the necessary and required structural changes to VBC by the January 26, 1995 date as mandated by federal law.

15. Defendant's failure to adequately meet all of its obligations including, *inter alia*, to complete a Self-Evaluation, to develop a Transition Plan for modification of existing facilities, and to have fully implemented all structural modifications, has denied, and continues to deny, Plaintiffs full, safe and equal access to Defendant's programs, services and activities that are otherwise available to persons without disabilities at the subject facility.

16. As a governmental and public entity, and as officials comprised of the highest level of decision makers, Defendant has engaged in conduct and acts of omission that subject Plaintiffs to discrimination solely on the basis of the disabilities. Defendant directly participated in or acquiesced in the conduct or acts of omission described in this Complaint. Defendant's discrimination against Plaintiffs solely on the basis of disability has been, and continues to be, arbitrary, knowing and intentional.

17. Under Title II of the ADA, the programs and activities of public entities must be accessible to people with disabilities unless that would cause a "fundamental alteration" to the program or activity or constitute an "undue financial and administrative burden" to the entity. 28 C.F.R. § 35.149-150. It is the burden of the entity to prove that compliance would result in such fundamental alteration or financial burden. Further, any decision that compliance would result in alteration or burden must be made after "considering all resources available for

6

use in the funding and operation of the service, program, or entity, and must be accompanied by a written statement of the reasons for reaching that conclusion." 28 C.F.R. § 35.150(a)(3). Huntsville cannot meet this burden.

18. Plaintiffs were subjected to discrimination in attempts to access the programs, services and facilities operated and owned by Huntsville. Plaintiffs continue to desire to utilize Huntsville's programs and services as well as return to the subject facilities owned and operated by Huntsville and therefore will continue to suffer discrimination by Huntsville in the future.

19. Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice, Office of Attorney General, promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 35 and ADA Standards for Accessible Design, 28 C.F.R. Part 36, Appendix A.

20. Huntsville has discriminated against Plaintiffs by denying full and equal enjoyment of benefits of a service, program or activity conducted by a public entity as prohibited by 42 U.S.C. §12101 *et seq.*, and by failing to remove architectural barriers pursuant to 28 C.F.R. §35.150(c).

21. Defendant, Huntsville has discriminated, and continues to discriminate against the Plaintiffs, and others who are similarly situated, by denying access to, and full and equal enjoyment of goods, services, facilities,

privileges, advantages and/or accommodations of Huntsville in derogation of Title II of the ADA, 42 U.S.C. § 12101 *et seq*.

22. The Plaintiffs have been unable to and continue to be unable to enjoy access to the benefits of the programs, services and facilities owned, operated and/or leased by Huntsville.

23. Defendant has altered the streets and sidewalks along Governor's Drive within two years from the filing of this complaint and has failed to remove barriers to access along said sidewalks and curb ramps in compliance with the ADA.

24. Specifically, at the intersection of Governor's Drive and Whitesburg, the southwest corner contains old sign foundations and cement blocks that obstruct the accessible route to and from the curb ramp at this corner.

25. Furthermore, the south side of Governors Drive near the Citgo station is missing a section of sidewalk that has been removed and not replaced, which completely bars the recently altered and newly constructed accessible route.

26. By way of further illustration, Governor's Drive at the block immediately west of Whitesburg contains newly constructed driveways that intersect the sidewalk and contain abrupt changes in level at these intersecting drives that have not been ramped in compliance with ADA standards for accessibility.

27. Alterations in North Huntsville to Blue Spring Road, Max Luther Drive and Winchester Road between Pulaski Pike and US 231 have been performed in 2010 to the extent that said streets have been resurfaced without addressing the numerous barriers to access at adjacent sidewalks and curb ramps that continue to exist.

28. Said recent failures to comply with ADA standards for accessibility during alterations to Governors Drive, Blue Spring Road, Max Luther Drive and Winchester Road demonstrate the Defendant's ongoing and long-standing pattern and practice of violating ADA requirements for accessibility throughout the City of Huntsville, as alleged with greater specificity hereinbelow, all of which constitute continuing violations of the ADA.

29. Defendant is in violation of 42 U.S.C. § 12101 *et seq.* and 28 C.F.R. § 36.302 *et seq.* and are discriminating against Plaintiffs due to the following violations, *inter alia*:

## **Curb Ramps and Sidewalks**

a. On the west side of Church Street where the Chamber of Commerce building is located the sidewalk has a point where the driveway crosses the sidewalk and there are no curb ramps on this sidewalk;

b.      The roundabout near the Embassy Suites on Monroe Street has newly provided curb ramps that are very steep and dangerous to use;

c.      At the intersection of Saint Claire Street and Pelham there are no curb cuts provided to connect for one to be able to cross the street when traveling down Saint Claire;

d.      At the intersection of Saint Claire and Turner Street there is not a curb ramp on one side of the intersection;

e.      At the corner of Saint Claire and Fakler Street there is not a curb ramp on the intersection closest to Galiten Street;

f.      At the corner of Madison and Saint Claire there are curb ramps that have very steep drops offs from the asphalt to the curb ramp;

g.      At the intersection of Clinton Avenue and Washington Street there are curb ramps that have flared sides that are too steep;

h.      On Galiten street closer to the downtown area from Manning on the opposite side of the road there are changes in level along the sidewalk on Galiten street that do not allow wheelchair users to use the sidewalk;

i.      At the corner of Fountain Circle and Williams Street there is a curb cut on the Fountain Circle side but no curb cut on the other side of the street to cross the street;

j.      In the 300 block of Fountain Circle there are several accessible parking spaces with the parking meters with controls located out of reach range for someone in a wheelchair. On all these parking spaces the accessible signage is bolted to the parking meter post too low to be viewed over a parked vehicle;

k.      At the accessible parking space on Washington Street, the accessible signage is mounted too low to be viewed over a parked vehicle;

l.      At the two (2) accessible parking spaces located on Green Street, the accessible signage is mounted too low to be viewed over a parked vehicle;

m.     The newly constructed sidewalk provided at Madison Street and Governors Drive, there is a change in level at the curb cut that is too steep for a wheelchair user to safely traverse;

n.      There are cracks beginning to form in the newly constructed sidewalk sections of Madison Street that are forming changes in level that cannot be traversed by a wheelchair;

o.  There is not a curb cut provided in the newly constructed sidewalk along Madison Street to cross St. Clair Street;

p.  Curb cuts are not provided at the corners of Gallatin Street and Lowe Street;

q.  Cars and trucks routinely park on sidewalks on Madison Street (e.g., 305 Madison Street) and are not issued citations by city police;

r.  On the south side of the street of Governors Drive before the CITGO Station at Whitesburg, a section of the sidewalk crumbled and crushed and is unusable;

s.  A curb cut is not provided to on Galliton to cross Pelham Street;

t.  A sidewalk is not provided along Galliton from Lowe Avenue towards the hospital;

u.  Curb cuts are not provided on Lowe Avenue from Galliton towards Williams at any of the parking lot entrances or exits;

v.  Many intersections along Governors Drive, Blue Spring Road, Max Luther Drive and Winchester Road contain curb ramps with excessive slopes and sidewalks in need of repair due to unbeveled changes in level barring wheelchair access;

w.     At the southwest corner of Governors Drive and Whitesburg, the curb cut contains old sign foundations and cement blocks that obstruct use of the curb cut;

x.     No curb cuts are provided at Gallatin and Pelham;

y.     No curb cuts are provided at the 100 block of Manning Street and Madison;

z.     Curb cuts are not provided at the two entrances to the parking lot of the Holiday Inn located on SW Lowe Street;

aa.    Curb cuts are not provided at the two parking lot entrances at Gallatin and Lowe Street;

bb.    No curb cuts are provided on the southeast corner of the intersection of St. Clair Street and Fackler Street;

cc.    Curb cuts are not provided in the 300 block of St. Clair and Turner Street;

dd.    Curb cuts are not provided on St. Clair Street at the power station;

ee.    Curb cuts are not provided in the 200 block of Davis and Pelham Street;

ff.    No curb cuts are provided at the two entrances to Compass Bank located on Governors Drive;

gg.     Curb cuts are not provided at the Huntsville Hospital Accounting Building located at 120 Governors Drive;

hh.     There are no curb cuts in the two entrances into the parking lot located at 2006 Franklin Street;

ii.     Sufficient maneuvering clearance is not provided at 2110 Franklin Street;

**Public Service Building**

jj.     Curb ramps leading from the city parking into the building both are too steep and have flared sides that are too steep;

kk.     The pay meter adjacent to the parking space designated as accessible is too high to be reached by someone seated in a wheelchair;

ll.     There is no curb cut on the sidewalk at the exit of the circle;

mm.    Accessible parking located on Fountain Circle Street lacks accessible signage;

nn.     There is a mat leading into the entrance of the building that is not firmly attached to the floor;

oo.     On the second floor there is a low drinking fountain provided but no high drinking fountain;

pp.    The accessible elevator car is too small and the emergency operating call system within the elevator requires tight grasping, pinching and twisting of the wrist to operate;

qq.    There are no permanent signs with Braille designating each room in the public works department on any floor;

rr.    On the first floor, the women's and men's toilet room have no accessible signage and because of the partitions there is no maneuvering clearance at the doors;

ss.    The men's and women's toilet room entry doors are too heavy;

tt.    The mirrors are too high and the accessible stalls in both the men's and women's toilet rooms are too small;

uu.    The accessible route to the stalls in the women's toilet room is so narrow that a wheelchair user cannot get to the accessible stall provided;

vv.    In the men's toilet room on the first floor the accessible stall door is so narrow that a wheelchair user cannot get into the accessible stall;

ww.    In the accessible stall in the men's toilet room there are no grab bars provided and the seat is too low;

xx.    The urinal in the men's toilet room is too high;

yy.    The mirrors in the men's and women's toilet rooms are too high and pipes are not insulated to prevent burning;

zz.    The men's and women's toilet rooms on the second floor lack accessible signage and the toilet room entry doors are too heavy and insufficient maneuvering clearance when exiting the toilet rooms;

aaa.    In the accessible stalls in the second floor toilet rooms there is a side grab bar provided but no rear grab bar provided;

bbb.    The accessible stall is not large enough in the second floor toilet rooms;

ccc.    The mirrors and soap dispensers are too high in the second floor toilet rooms;

ddd.    Pipes are not insulated to prevent burning under the lavatories on the second floor;

## Huntsville Municipal Complex

eee.    Directional signage is not provided to indicate the location of the ramp into the City Administrative Building;

fff.    Within the Huntsville Municipal Complex in the elevator the higher buttons are out of reach ranges;

ggg.   Low drinking fountains are provided but no high drinking fountains are provided;

hhh.   Permanent rooms and spaces are not designated with Braille;

iii.   On the first floor at the toilet rooms there is no accessible signage provided and the toilet room entry doors are too heavy;

jjj.   There is no clear floor space on the pull side of the door when exiting the toilet rooms;

kkk.   The accessible stalls are too small.

lll.   The pipes are not insulated underneath the lavatories to prevent burning;

## Historic Huntsville Depot

mmm.   Train and Trolley Shop:

    i.   At the train and trolley shop where one purchases tickets, there is a very steep ramp leading up to the doorway and edge protection and handrails are not provided;

    ii.   The level landing at the door is not deep enough;

    iii.   There is knob type hardware on the door that requires tight grasping and twisting of the wrist to operate;

    iv.   The service counter in the train and trolley station is too high;

nnn.    Men's Ground Floor Toilet Rooms:

    i.    The men's toilet room signage is located on the door;

    ii.    There is no clear floor space on the pull side of the door when exiting the toilet room;

    iii.    The accessible stall is too small for a wheelchair user;

    iv.    The lavatory hardware requires tight grasping, pinching and twisting of the wrist to operate;

    v.    Pipes beneath the lavatory are not insulated to prevent burning;

    vi.    The paper towel dispenser is too high;

    vii.    The coat hook in the accessible stall in the men's toilet room is too high;

    viii.    The toilet seat in the accessible stall is too low;

    ix.    There is insufficient maneuvering clearance on the pull side of the door when entering the toilet room;

ooo.    Women's Ground Floor Toilet Rooms:

    i.    Pipes are not insulated under lavatories;

    ii.    Accessible signage is mounted on the toilet room entry door;

      iii.      The lavatory hardware requires tight grasping, pinching and twisting of the wrist to operate;

      iv.      There is insufficient maneuvering clearance on the pull side of the door when entering the toilet room;

      v.      The paper towel dispenser is too high;

      vi.      The coat hook in the accessible stall in the women's toilet room is too high;

      vii.      The accessible stall is too small for a wheelchair user;

      viii.      The toilet seat in the accessible stall is too low;

ppp.    <u>Men's Toilet Room Between Train and Trolley Station and Little Toots Imagination Station:</u>

      i.      The ramp leading to this toilet room is too steep and lacks edge protection provided underneath the handrails on the side of the curb ramp;

      ii.      The men's toilet room entry door is too heavy;

      iii.      The water closet in the accessible stall is too far from the sidewall and the toilet paper dispenser is too close to the side grab bar;

qqq.    <u>Women's Toilet Room Between Train and Trolley Station and Little Toots Imagination Station:</u>

i.      Accessible signage is not provided;

ii.     The toilet room entry door is too heavy;

iii.    There is insufficient maneuvering clearance on the pull side of the door when exiting the toilet room;

iv.     The paper towel dispensers are too high;

v.      The water closet is located too far from the side wall;

vi.     The toilet paper dispenser is too close to the side grab bar;

rrr.    Little Toots Imagination Station:

i.      The ramp leading up to the Imagination Station is too steep and lacks handrails and edge protection;

ii.     The level landing is not deep enough;

iii.    The entry door contains knob hardware that requires tight grasping and twisting of the wrist to operate;

sss.    Men's and Women's Toilet Room Near Fire Engines:

i.      Accessible signage is not provided adjacent to the toilet room entry doors;

ii.     The toilet room entry doors are too heavy;

iii.   The stall door of the accessible stall in the men's toilet room swings into the accessible stall such that a wheelchair user cannot enter and close the stall door;

iv.   In the women's toilet room, the side grab bar is too short and the toilet paper dispenser is too close to the side grab bar;

ttt.   <u>Happy Birthday Caboose:</u>   The ramp leading up to the Happy Birthday Caboose has a very steep drop off at the end making it unusable for wheelchair users and lacks compliant handrails;

uuu.   <u>Ramp Leading to Eunice's Country Kitchen:</u> The ramp leading to this facility is too steep and lacks edge protection and the handrails do not continue onto the level landings provided at the top and bottom of the ramp;

vvv.   <u>Routes Provided Throughout Historic Huntsville Depot:</u> There are several routs provided throughout the depot grounds that cross old railroad tracks that create changes in level that are difficult and almost impossible to move across when using a wheelchair or other mobility device;

**Sandhurst Park**

www.   Parking:

    i.    Parking spaces designated as accessible lack signage;

    ii.    Van accessible parking is not provided;

    iii.    The flared sides of the curb ramps are too steep;

    iv.    There is also an accessible parking space that would be wide enough to potentially be a van accessible parking space but it has no sign, the access aisle is on the left, and the built up curb ramp protrudes into the access aisle;

xxx.   Accessible Routes and Tables:

    i.    Many walkways that lead up to the parking as well as the covered picnic area are steep enough to be considered ramps and lack handrails;

    ii.    There are no accessible picnic tables provided;

    iii.    All of the picnic tables that are not covered do not have accessible routes leading to those picnic tables;

    iv.    There are no accessible routes leading to the BBQ pit near the picnic tables;

yyy.   Men's Toilet Room:

    i.    Accessible signage is not provided at the toilet room entry door;

        ii.      The pipes are not insulated under the lavatory;

        iii.     The lavatory hardware requires tight grasping, pinching and twisting of the wrist to operate

   zzz.    <u>Women's Toilet Room:</u>

        i.       Accessible signage is not provided at the toilet room entry door;

        ii.      In the women's toilet room the toilet seat is too low.

        iii.     Pipes are poorly insulated underneath the lavatory and the lavatory contains hardware that requires tight grasping and twisting of the wrist to operate;

## Brahan Spring Park Natatorium

   aaaa.   <u>Parking:</u>

        i.       Parking spaces designated as accessible do not have signs that can be viewed over parked vehicles;

        ii.      The curb ramp has sides which are at a 90 degree angle and are very steep and dangerous;

        iii.     The curb ramp leading up to the entrance is too steep;

        iv.    There is no pool lift or ramp provided into the pool;

   bbbb.   <u>Family Toilet Room and Locker Rooms:</u>

      i.      Accessible signage is not provided adjacent to the family toilet room;

     ii.     Upon information and belief, there are other barriers to access within the family toilet room and locker rooms;

**Joe Davis Stadium**

cccc.    <u>Parking:</u>

      i.      There are several accessible parking spaces that are not on the nearest accessible route to the primary entrance or the ticket counter;

     ii.     Many of the parking spaces designated as accessible lack accessible signage;

    iii.    Other accessible parking spaces have signs that are too low to be viewed over parked vehicles;

    iv.    Almost all accessible parking spaces are not clearly painted because the paint has faded;

     v.     Many ticket counters are too high;

dddd.    <u>Women's Toilet Room (right side of the primary ticket window upon entering the stadium):</u>

      i.      At the women's toilet there is no accessible signage provided adjacent to the latch side of the door;

      ii.    There is insufficient clear floor space to enter the accessible stall;

      iii.    The water closet is too far from the side wall;

      iv.    The toilet paper dispenser is located almost on top of the side grab bar;

      v.    Toe clearance is not provided at the two pedestal-type lavatories provided;

      vi.    The soap dispenser is out of reach ranges above each lavatory;

eeee.    <u>Men's Toilet Room (right side of the primary ticket window upon entering the stadium):</u>

      i.    Accessible signage is not provided on the wall adjacent to the latch side of the toilet room entry door;

      ii.    Toe clearance is not provided at the pedestal-type lavatories;

      iii.    The soap dispenser is out of reach ranges above each lavatory;

      iv.    Within the accessible stall the coat hook is too high;

      v.    There is no side grab bar provided;

      vi.    The lowered urinal is too high;

ffff.    Drinking Fountains:  The drinking fountain by the men's toilet room does not have a high drinking fountain provided;

gggg.    Concession Stands:        The concession stands are too high;

hhhh.    Toilet Rooms Left of Primary Entrance:

    i.     Accessible signage is not provided at the toilet room entry door;

    ii.    The soap dispenser is out of reach ranges above each lavatory;

    iii.   Within the accessible stall the coat hook is too high;

    iv.    There is no side grab bar provided in the accessible toilet stall;

    v.     The lowered urinal is too high;

    vi.    There is insufficient clear floor space in the women's toilet room on the pull side of the door when entering the stall;

    vii.   There is no toe clearance and insufficient knee clearance under the accessible lavatories;

    viii.  The toilet paper dispenser is too close to the side grab bar;

iiii.    Sky Boxes: Going into Sky Box #1, the entry door requires tight grasping and twisting of the wrist to enter; and there is no

way to access accessible seating in the sky box as the seating is elevated and there is no ramp up to it;

jjjj.   Women's Toilet Room Near Sky Box:

    i.   Accessible signage is not provided at the toilet room entry door;

    ii.   The toilet room entry door is too heavy;

    iii.   The drinking fountain is in the maneuvering clearance on the pull side of the toilet room entry door;

    iv.   There is no low drinking fountain provided;

    v.   The toilet stall designated as accessible is too small for a wheelchair user;

kkkk.   Men's Toilet Room Near Press Office:

    i.   Accessible signage is not provided;

    ii.   The accessible toilet stall is too small;

    iii.   The paper towel dispenser is too high;

llll.   Stadium Seating:

    i.   In terms of accessible seating, accessible seating is provided in the middle level of the stadium only and there is no accessible seating provided at the lower or upper levels;

ii. The seating that is provided has obstructed views when spectators stand directly in front of accessible seating positions;

## Mastin Lake Park

mmmm. Sufficient accessible parking is not provided;

nnnn. Concession stands are too high;

oooo. Signage provided at parking spaces designated as accessible is too low;

pppp. There is no accessible route to the dugouts;

## Lakewood Community Center

qqqq. There are two accessible parking spaces provided that lack accessible signage.

rrrr. It appears that the running slope of all accessible parking spaces is too steep;

ssss. There is a change in level from the asphalt to the sidewalk leading from the accessible parking spaces to the front of the building that is very severe;

tttt. The men's and women's toilet rooms lack accessible signage on the interior of the community center;

uuuu. Both toilet room entry doors are too heavy;

vvvv.    Mirrors provided in the toilet rooms are too high;

wwww.  Lavatory pipes are not insulated to prevent burning;

xxxx.    Soap and paper towel dispensers are too high;

yyyy.    Coat hooks are too high;

zzzz.    In the men's toilet room, the accessible stall is too small;

aaaaa.  There are six accessible parking spaces provided down by the field house and the BBQ area all of which lack accessible signage;

bbbbb.  There are no accessible tables provided at the picnic area;

ccccc.  Leading from the field house towards the baseball fields and the soccer field there is no accessible route provided other than a gravel vehicular way;

ddddd.  There are no accessible routes to any of the dugouts or to sit at the bleachers;

eeeee.  Leading from the BBQ pit to the lower baseball fields there is a transition from the asphalt onto the sidewalk that is very severe and dangerous in terms of a drop off;

## Dr. Richard Showers Sr. Recreation Center and Pool

fffff.    The pool lift is frequently inoperable and not maintained in working order during operation of the pool;

ggggg.  Plaintiff Joanne Pearson has been denied access to the pool on the basis of her disability and advised that Defendant had no intention of providing an operable lift at the pool;

hhhhh.  The dressing room and showers lack accessible features necessary for a wheelchair user to effectively utilize these elements;

iiiii.  The family dressing room, which contains some accessible features, is routinely locked leaving no accessible dressing rooms that are open to the public;

jjjjj.  Accessible parking spaces lack signage that is viewable over parked vehicles;

**Burritt Museum**

kkkkk.  There is no accessible parking nearest the accessible route to the welcome center where one purchases tickets;

lllll.  Leading up the ramp in the welcome center, there is no edge protection on one side of the ramp. The sole provided handrail does not continue onto the level landings at the top and bottom of the ramp and there is no handrail on one side of the ramp;

mmmmm.  Within the welcome center there is a gift shop that does not have accessible paths of travel;

nnnnn. Going to the Balch house there is a new ramp that does not have handrails that continue onto the level landing at the top and bottom;

ooooo. The threshold bevel that goes into the house is very steep and dangerous to use;

ppppp. All of the other ramps leading into the buildings do not have handrails that continue onto the level landings;

qqqqq. Many of the ramps provided do not have edge protection;

rrrrr. Going into the Burritt Mansion there is no directional signage indicating the direction of the accessible route leading into the Burritt Mansion;

sssss. Going up the ramp on the walkway to the ramp there are bushes that overgrow the sidewalk leading to the ramp;

ttttt. Going up the ramp there are not handrails on both sides of the ramp that continue onto the level landings on the top and bottom;

uuuuu. At the accessible toilet room's accessible signage is located on the doors;

vvvvv.    Leading out of the trillium center and down to the accessible parking there is a ramp that does not have handrails that continue onto the level landings at the top and bottom;

wwwww.    At the Balch house there is no ramp provided to see the post office or kitchen on the back side of the house;

xxxxx.    There are no detectable warnings provided on curb ramps leading onto where the accessible parking spaces are provided.

30.    There are other current barriers to access and violations of the ADA in Huntsville which were not specifically identified herein as the Plaintiffs are not required to engage in a futile gesture pursuant to 28 C.F.R. §36.501 and, as such, only once a full inspection is performed by Plaintiffs or Plaintiffs' representatives can all said violations and barriers to access be identified.

31.    The Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have their reasonable attorney's fees, costs and expenses paid by Huntsville pursuant to 42 U.S.C. § 12205.

32.    Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant Plaintiffs injunctive relief, including an Order to alter the subject programs, services and facilities to make them readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and closing the

subject programs, services and facilities until the requisite modifications are completed.

WHEREFORE, the Plaintiffs demand judgment against Huntsville and request the following injunctive and declaratory relief:

a.   That the Court declare that the programs, services and facilities owned, operated and administered by Defendant, are violative of the ADA;

b.   That the Court enter an Order directing Defendant to alter its programs, services and facilities to make them accessible to and useable by individuals with disabilities to the full extent required by Title II of the ADA;

c.   That the Court enter an Order directing Defendant to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time so as to allow Defendant to undertake and complete corrective procedures;

d.   That the Court award reasonable attorney's fees, costs (including expert fees) and other expenses of suit, to the Plaintiffs; and

e.   That the Court award such other and further relief as it deems necessary, just and proper.

## COUNT II – VIOLATION OF THE REHABILITATION ACT

33.   Plaintiffs re-allege and incorporates by reference, as if fully set forth again herein, the allegations contained in paragraphs 1 through 6 of this Complaint.

34.   As more fully described above, Plaintiff is an individual with a disability.

35.   Furthermore, the Plaintiffs are Huntsville Alabama residents who do

or would like to frequent the subject facilities that are currently inaccessible as described above and herein, and are otherwise qualified to use and enjoy the programs, services and benefits provided by Defendant in the City of Huntsville, including but not limited city sidewalks, curb ramps and parking, the Public Service Building, the Municipal Complex, Historic Huntsville Depot, Sandhurst Park, the Natatorium, the Stadium, Mastin Lake Park, the Community Center, Pool and the Museum.

36.    Defendant's acts and omissions that result in unequal access to the programs, services, facilities and activities provided by Defendant as alleged herein are in violation of Section 504 of the Rehabilitation Act as codified in 29 U.S.C. § 794 *et seq.*, and the regulations promulgated thereunder which are codified in 34 C.F.R. § 104 *et seq.* Defendant is the direct recipient of federal funds sufficient to invoke the coverage of Section 504, and is unlawfully and intentionally discriminating against Plaintiffs on the sole basis of the disabilities of Plaintiffs.

37.    Solely by reason of disability, Plaintiffs have been, and continue to be, excluded from participation in, denied the benefit of, and subjected to discrimination in their attempts to receive full, safe and equal access to the services offered by Defendant.

38.    Defendant is in violation of Section 504 of the Rehabilitation Act, as

amended, 29 U.S.C. §794 and is discriminating against the Plaintiffs due to the

violations referenced hereinabove in Paragraph 29, which are hereby re-alleged

and incorporated herein by reference, as if fully set forth again herein.

39. Upon information and belief, there are other current violations of the

Rehabilitation Act in Huntsville and only once a full inspection is performed by

Plaintiffs or Plaintiffs' representatives can all said violations be identified.

WHEREFORE, the Plaintiffs demand judgment against Huntsville and

request the following injunctive and declaratory relief:

A    That this Court accept jurisdiction of this case and declare that the programs, services and facilities owned, operated and administered by Huntsville are discriminatory and are violative of the Rehabilitation Act;

B.    That the Court enter an order requiring Huntsville to alter its programs, services and facilities to comply with federal law and regulations to make them accessible to and usable by individuals with disabilities to the extent required by the Rehabilitation Act;

C.    That the Court enter an order directing Huntsville to evaluate and neutralize its policies, practices, and procedures toward individuals with disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures;

D.    That the Court enter an order mandating that Huntsville undertake a self-evaluation and that such evaluation contain a description of all of Defendant's programs, services and facilities; a review of all policies and practices that govern the administration of such programs, services and facilities; and an analysis of whether the policies and practices regarding such administration adversely affect the full participation of and use by individuals with disabilities;

E.    That the Court enter an order mandating Huntsville to expeditiously

make all reasonable and appropriate modifications in its policies, practices and procedures, provide effective signage, remove all architectural barriers that would not cause an undue financial or administrative burden or cause a fundamental alteration to the program or activity, provide alternative means when necessary; and, otherwise, take all such steps as are reasonable and necessary to ensure that persons with disabilities are no longer excluded, denied services, segregated or otherwise treated differently and discriminated against at Huntsville;

F.      Awarding reasonable attorney fees, expert fees, costs, and expenses to the Plaintiff;

G.      Retaining jurisdiction of this case until Defendant has fully complied with the orders of this Court and awarding such other, further or different relief, as the Court deems necessary, just and proper.

Dated this 15th day of October 2010.

Respectfully submitted,

By: _____

Edward I. Zwilling, Esq.
Alabama State Bar No.: ASB-1564-L54E

**OF COUNSEL:**
Schwartz Zweben, LLP
600 Vestavia Parkway, Suite 251
Birmingham, Alabama 35216
Telephone:  (205) 822-2701
Facsimile:  (205) 822-2702
Email:      ezwilling@szalaw.com